IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL S. SARKESIAN, *individually, and as
a Qualified Beneficiary of the NANCY J. SARKESIAN
TRUST AGREEMENT dated April 20, 2000, as restated
on November 2, 2016, and the MICHAEL M. SARKESIAN
TRUST AGREEMENT dated April 20, 2000, as restated on
December 14, 2016,*

        Plaintiff,

v.                                             Case No.  21-1285-JWB

HAIG SARKESIAN, *individually, and as Trustee of the
NANCY J. SARKESIAN TRUST AGREEMENT dated April 20,
2000, as restated on November 2, 2016, and the MICHAEL M.
SARKESIAN TRUST AGREEMENT dated April 20, 2000, as
restated on December 14, 2016,*

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss.  (Doc. 5.)  The motion has been fully briefed and is ripe for decision.  (Docs. 6, 9, 14.)  For the reasons stated herein, the motion to dismiss is DENIED.

**I.  Facts**

The following facts are taken from the complaint and are assumed to be true for purposes of deciding the motion to dismiss.

Plaintiff is a citizen of the Swiss Confederation who resides in the United Kingdom.  Defendant is a citizen of the United States who resides in Shawnee County, Kansas.  The amount in controversy exceeds $75,000.

Plaintiff and Defendant are brothers. Their parents – Michael M. Sarkesian and Nancy J. Sarkesian – created trust agreements on April 20, 2000, which they amended and restated on November 6, 2016. Nancy and Michael's estate plans were mirror images of each other, with each requiring specific bequests to their grandchildren upon the death of either Nancy or Michael. After that, their estate plans called for the remaining assets of the first spouse to die to be held in trust for the survivor and, upon the death of the second, for the remaining assets of both trusts to be distributed in equal shares to Plaintiff and Defendant. (Doc. 1 at 2.)

Nancy and Michael appointed Defendant as a co-trustee of their respective trusts, which would make Defendant the sole trustee of each trust upon Nancy and Michael's deaths. On the same day that Nancy and Michael restated their trusts, they executed separate General Durable Powers of Attorney appointing Defendant as attorney-in-fact. (*Id.* at 3.)

Michael's estate plan included retirement accounts at the Teachers Insurance and Annuity Association of America ("TIAA"). Consistent with his overall estate plan, Michael designated Nancy as his primary beneficiary and named Plaintiff and Defendant as equal contingent beneficiaries of the accounts. (*Id.*)

Michael died on May 11, 2019. On June 7, 2019, TIAA notified Nancy that she was the beneficiary of the retirement accounts created by Michael. Defendant, as Nancy's attorney-in-fact, signed account applications at Jackson National Life Insurance Company ("Jackson") causing the TIAA retirement accounts to roll over to Jackson retirement accounts in Nancy's name. In the Jackson account applications, Defendant named himself as the sole primary beneficiary of the retirement account, with his wife as the contingent beneficiary, thereby excluding Plaintiff as a beneficiary. Plaintiff alleges that this act was done intentionally, in bad faith, fraudulently, and in

violation of both Defendant's authority as power-of-attorney and his fiduciary duties, and contrary to Nancy's and Michael's estate plans. (*Id.*)

Nancy died on December 12, 2019. After Nancy's death, Defendant transferred Nancy's retirement accounts at Jackson to his own accounts at TD Ameritrade. Plaintiff alleges this was contrary to Defendant's authority as attorney-in-fact and trustee and in violation of his fiduciary duties. (*Id.*)

Upon Nancy's death, Defendant became the sole trustee of Nancy's trust and Michael's trust. As trustee, Defendant made the specific bequests to the grandchildren as required by the respective trusts. Plaintiff alleges that Defendant has refused to divide his parents' retirement accounts or the remaining trust assets equally with Plaintiff as required by Nancy and Michael's estate plans. According to the complaint, Defendant has also refused to respond to reasonable requests by Plaintiff for information about management of the trusts, including an accounting of the retirement accounts and trusts. (*Id.* at 4.) The complaint alleges that as of September 2021, Michael's trust held about $300,000 in assets, Nancy's trust had a value of more than $1,000,000, and the retirement accounts had a value of more than $300,000. (*Id.*)

Count I of the complaint alleges that Defendant violated his duties as attorney-in-fact and as a fiduciary by designating himself as the sole beneficiary of the retirement account and then taking possession of the proceeds in that account; by failing to keep records of receipts, disbursements, and transactions made on Nancy's behalf; and by commingling the retirement account with his own funds or assets. (*Id.* at 5.) It alleges that pursuant to K.S.A. 58-657(g), Defendant is liable to Plaintiff for damages, reasonable attorney's fees, and punitive damages. (*Id.* at 5-6.)

Count II alleges that Plaintiff committed a breach of trust and is liable to Plaintiff, who is a qualified beneficiary of each trust, for violating the duties he owed as trustee of Nancy's and Michael's trusts.  Count II seeks an order directing Defendant to provide an accounting, to perform his duties as trustee by distributing one-half of the trusts' properties to Plaintiff as a qualified beneficiary, to remedy the damages caused by the breach of trust, and any other necessary relief under K.S.A. 58a-1001.  (*Id.* at 6.)

Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  He first argues the court lacks subject matter jurisdiction by virtue of the "probate exception" to diversity jurisdiction.  Even if the court has subject matter jurisdiction, Defendant argues that Count I fails to state a claim upon which relief can be granted because Defendant owed no legal duty to Plaintiff and because the allegations of fraud are conclusory.  (Doc. 6.)

**II. Standards**

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946). Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction;

4

or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). A factual attack allows parties to "go beyond allegations in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). When reviewing a factual attack, the court may consider affidavits and other documents to resolve disputed jurisdictional facts without converting the motion to a summary judgment motion. *Id*.

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

**III.  Analysis**

  **A.  Subject matter jurisdiction**

  1.  <u>Probate exception</u>.  Federal district courts have jurisdiction to hear controversies involving more than $75,000 if there is diversity of citizenship between the plaintiff and defendant, including disputes between a citizen of a State of the United States and a citizen of a foreign state. 28 U.S.C. § 1332(a)(2).   The Supreme Court has recognized an exception to this rule, however, based on the premise that "a federal court has no jurisdiction to probate a will or administer an estate" or "to disturb or affect the possession of property in the custody of a state court." *Dunlap*

5

*v. Nielsen*, 771 F. App'x 846, 849 (10th Cir. 2019) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). After a period in which courts applied this exception broadly, the Supreme Court narrowed it and explained that it "reserves to state probate courts [1] the probate or annulment of a will and [2] the administration of a decedent's estate; it also precludes federal courts from [3] endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 850 (quoting *Marshal v. Marshal*, 547 U.S. 293, 311-12 (2006)). Federal courts thus retain jurisdiction of diversity cases "that are probate-related or that may impact the state probate court's performance of the three tasks reserved to it, so long as the federal court itself does not engage in these tasks." *Id.* (quoting *Marshal*, 547 U.S. at 299-300). This means the exception does not apply merely because a case involves questions that would ordinarily be decided by a probate court in determining the validity of an estate planning instrument, or because a state probate court may be bound by the federal court judgment, or because the federal ruling could affect the state court's distribution of assets. *Id.* (citations omitted.)

    2. <u>Application to Plaintiff's claims</u>. Defendant argues the probate exception applies because in order to grant the requested relief, the court would have to administer Nancy's estate and probate her will. (Doc. 14 at 4.) This argument is unpersuasive. Plaintiff requests relief that does not ask or require the court to probate or annul a will, to administer a decedent's estate, or to dispose of property in the custody of a state probate court.[1] Count I of the complaint alleges that Defendant breached various duties imposed by law upon attorneys-in-fact and seeks compensatory damages, reasonable attorney's fees, and punitive damages from Defendant under K.S.A. 58-657(g). (Doc. 1 at 5-6.) Plaintiff alleges that Defendant's conduct was contrary to their parents'

---

[1] Defendant concedes there is no property in the custody of a state probate court, as no formal probate proceedings have been commenced for Nancy's estate. (Doc. 14 at 3.)

6

estate plan as shown by the terms of their trusts and their naming of trust beneficiaries.  (*See* Doc. 9 at 8.)  Determining whether Defendant's conduct violated these legal duties and granting a personal judgment against Defendant for any damages caused by such a violation does not require probate of Nancy's will or administration of Nancy's estate.  *Cf. Marshall*, 547 U.S. at 312 (claim for tortious interference with a gift or inheritance was not within the probate exception; the plaintiff "seeks an *in personam* judgment against [the defendant], not the probate or annulment of a will.")  *See also id*. at 311 (criticizing decisions, including cases that applied the probate exception to suits for breach of fiduciary duties against executors and trustees, as "block[ing] federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate.")  Count II similarly seeks damages caused by an alleged breach of trust and further seeks an accounting of the trust assets and an order directing Defendant to distribute one-half of the trusts' properties to Plaintiff.  Although Defendant equates the granting of relief relating to Nancy's trust with administration of Nancy's estate, there is a fundamental difference between the two.  As explained in *Curtis v. Brunsting*, 704 F.3d 406 (5th Cir. 2013):

> Assets placed in an inter vivos trust generally avoid probate, since such assets are owned by the trust, not the decedent, and therefore are not part of the decedent's estate. In other words, because the assets in a living or inter vivos trust are not property of the estate at the time of the decedent's death, having been transferred to the trust years before, the trust is not in the custody of the probate court and as such the probate exception is inapplicable to disputes concerning administration of the trust.

*Id.* at 409-10 (footnote omitted.)  Relief directed at assets held by Nancy's trust does not require administration of her estate. *See Tripp v. Mary M. Tripp Fam. Tr.*, No. 20-CV-02012-LTB-KLM, 2021 WL 5537552, at *3 (D. Colo. Feb. 17, 2021) ("No state probate court currently has custody of the Trust assets nor is there reason to believe that that will ever be the case because 'assets placed in an inter vivos trust generally avoid probate, since such assets are owned by the trust, not the decedent, and therefore are not part of the decedent's estate.'").  Thus, insofar as Plaintiff seeks

7

distribution of assets in Nancy's trust, the claim is not outside of this court's diversity jurisdiction. Similarly, adjudicating whether a trustee breached a duty toward a trust beneficiary does not require administration of the estate merely because the trustee's duties have some relation to assets that might be part of a decedent's estate. *Cf. Lefkowitz v. Bank of New York*, 528 F.3d 102, 108 (2d Cir. 2007) ("The probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court."). *See also Marshall*, 547 U.S. at 299-300 (rejecting argument that the probate exception extends to any "probate related matter"). Insofar as the complaint alleges that Defendant breached legal duties as an attorney-in-fact or trustee and is personally liable therefore in damages, the claims are outside of the probate exception. Because the exception does not apply to such claims, and the elements of diversity jurisdiction are otherwise present, Defendant's motion to dismiss the claims for lack of jurisdiction will be denied.

    **B. Whether the complaint states a claim for relief**

Defendant contends the allegations in Count I fail to state a claim because they do not show that Defendant owed any duty to Plaintiff. Defendant argues that as Nancy's attorney-in-fact, he owed a duty only to Nancy and not to Plaintiff. (Doc. 6 at 8.) He notes that K.S.A. 58-657(g) makes an attorney-in-fact liable to "the principal or the principal's successor in interest," and he argues that Plaintiff was not Nancy's successor-in-interest because "he never had a vested interest in the retirement accounts." (*Id.*)

Count I is based on K.S.A. 58-657(g), which provides in part that an attorney-in-fact who acts in bad faith, fraudulently, or dishonestly, "and thereby causes damage or loss to the principal or to the principal's successors in interest … shall be liable to the principal or to the principal's successors in interest…." The inclusion of the principal's "successors" makes clear that the right

to enforce the provision is not strictly limited to the principal. Consistent both with the language of the provision and with common sense, when a principal dies the right to seek a remedy for damages inflicted passes to someone who has taken over the interest formerly held by the principal. It seems clear that a "successor in interest" would include a personal representative such as a court-appointed administrator of the principal's estate. But it could also encompass the beneficiary of a trust established by a principal who is now deceased. The court finds no Kansas case law on that question, but "[v]arious courts around the country, both state and federal, have held that, under certain circumstances, beneficiaries in an estate plan qualify as successors in interest to a decedent." *Robert N. Brewer Fam. Found. v. Huggins as Tr. of Christine C. Brewer Revocable Tr.*, No. 2:18-CV-915-ALB, 2019 WL 6873655, at *5 (M.D. Ala. Dec. 16, 2019) (listing cases and finding that a foundation named as a beneficiary in decedent's trust could bring claim for breach of duty against attorney-in-fact who allegedly diverted money to himself and his family contrary to the decedent's estate plan).[2]

The court finds that Count I plausibly claims that Defendant is liable to Plaintiff for damages under K.S.A. 58-657(g). The allegations in the complaint show that Plaintiff, as a named beneficiary of Nancy and Michael's trusts, has succeeded to Nancy's and Michael's interests in the trusts. *Cf. Mangrum v. Chavis,* 2018 WL 1101719, *3 (Va. Mar. 1, 2018) (named beneficiary on account was successor-in-interest of the principal under Uniform Power of Attorney Act). Plaintiff's allegations show that he has a financial interest in the trust. They also show that he is the only person with an incentive to seek a remedy for Defendant's alleged breach of duties to

---

[2] Kansas is one of six states that apply a version of the Uniform Durable Power of Attorney Act. That act does not specify who can seek review of and relief from the conduct of an attorney-in-fact. By contrast, the 2006 Uniform Power of Attorney Act, which has been adopted by a majority of states, expressly identifies such persons and includes "[a] person named … as a beneficiary of a trust created by … the principal that has a financial interest in the principal's estate." Unif. Power of Attorney Act § 116(a)(6) (Unif. Law Comm'n 2006).

Nancy and Michael, including his alleged self-dealing and failure to adhere to Nancy and Michael's estate plans.  Plaintiff has standing to seek a remedy for damages to that interest from Defendant's use of his power of attorney to name himself sole beneficiary on accounts transferred from Michael to Nancy – acts which the complaint alleges were contrary to Defendant's authority as attorney-in-fact and contrary to Michael and Nancy's estate plans.  Construing a "successor in interest" to include a trust beneficiary such as Plaintiff is consistent with the remedial purpose of the statute, which allows a person who has taken over the principal's interest to obtain a remedy for wrongful acts that damage that interest.[3]  It is also consistent with the broad scope of remedies elsewhere allowed under the Kansas Power of Attorney Act, including one that makes an attorney-in-fact accountable "to the principal's personal representative, or if none, the principal's successor," and another that broadly allows "the principal's legal representative, an adult member of the principal's family[,] or any person interested in the welfare of the principal" to petition a court for an accounting by an attorney-in-fact.  *See* K.S.A. 58-656(g), 58-662(a).  *Cf. Stephan v. Martin*, 396 P.3d 723 (Table), 2017 WL 7053837 (Kan. Ct. App. June 16, 2017) (court did not need to address whether a trust beneficiary could assert a claim for damages under K.S.A. 58-657(g) because the petition only sought an accounting).  As such, Count I states a plausible claim for relief.

Defendant additionally argues that Count I fails as a matter of law because it does not allege that Plaintiff relied on or was deceived by Defendant's allegedly fraudulent conduct.  Defendant further contends the allegations of fraud are not stated with particularity as required by Fed. R.

---

[3] Defendant notes that the Uniform Probate Code (UPC) defines "successors" as "persons, other than creditors, who are entitled to property of a decedent under the decedent's will or this [code]." *See* Doc. 14 at 8 (quoting UPC § 1-201(49)) (Unif. Law Comm'n 2019).  Kansas has not adopted that definition, so it does not control here, although by extension the definition suggests that where the "interest" involved concerns a trust, a successor-in-interest of a deceased trustor would include a person entitled to the property under the trust – in other words, a trust beneficiary. It bears pointing out that the UPC also incorporates the Uniform Power of Attorney Act and its provisions expressly allowing a trust beneficiary to petition for relief from the conduct of an attorney-in-fact. UPC § 5B-116(a)(6).

10

Civ. P. 9(b). (Doc. 6 at 9-10.) Neither of these arguments shows grounds for dismissal of the complaint. Section 58-567(g) applies to a broader scope of conduct than common law fraud. A claim under the statute can be based on acts done "in bad faith, fraudulently or otherwise dishonestly." *Id.* Detrimental reliance by a plaintiff is not an essential component of a claim under this standard. The complaint alleges, among other things, that Defendant's actions were done in bad faith and that they caused a loss to Plaintiff as Nancy and Michael's successor. That is sufficient to state a claim under the statute, even assuming acts done "fraudulently" might require some showing of reliance. As for Rule 9(b), that rule requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." To the extent it applies here, Plaintiff has satisfied it. The complaint sets forth in clear terms the conduct complained of and the circumstances under which it occurred. Among other things, it plainly alleges that Defendant named himself sole beneficiary of the TIAA accounts when he transferred those accounts to Nancy, thereby excluding Plaintiff as a beneficiary, contrary to Michael and Nancy's estate plans and contrary to his authority as attorney-in-fact, and that this was done purposely by Defendant in bad faith, fraudulently, and dishonestly. These allegations specifically describe the allegedly fraudulent actions and give Defendant fair notice of the claim.

**IV. Conclusion**

Defendant's motion to dismiss (Doc. 5) is DENIED. IT IS SO ORDERED this 12th day of September, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT COURT